Dr. Arnold R. Weber President University of Colorado Boulder, CO 80309
Dear Dr. Weber:
I write in response to your request for my opinion about the lawfulness of requiring nonresident students to re-enroll before being permitted to matriculate as in-state students.
QUESTION PRESENTED AND CONCLUSION
Is it lawful for the Board of Regents to require students who were admitted as out-of-state students but who qualify for a change in classification to in-state student for tuition purposes to successfully compete for admission with other in-state applicants before being permitted to matriculate as in-state students at the University of Colorado?
No.
ANALYSIS
The general assembly has enacted statutes which set out specific rules and presumptions governing the classification of students for tuition purposes as in-state or out-of-state residents. Article 7, title 23, C.R.S. (1973 1984 Supp.). The stated purpose of those rules is that tuition status be determined uniformly by state institutions of higher education. Section23-7-101, C.R.S. (1973). A student who has previously registered at an institution may file written evidence with the registering authority to demonstrate that his tuition status has changed. The general assembly has required that a change of classification established in that manner must be given effect at the time of the student's next registration. Section 23-7-103(2)(d), C.R.S. (1973).
It is my understanding that this statutory requirement which authorizes students to change residency for tuition purposes conflicts with certain limits which have been placed on the number of students in each residency classification who are permitted to enroll at the University of Colorado at Boulder. The higher education governing boards and the general assembly's joint budget committee have entered into a memorandum of understanding for the fiscal year 1984-1985 which, among other matters, sets a cap on both the total enrollment at the University of Colorado at Boulder and the number of in-state students enrolled. When an out-of-state student changes his classification to in-state status, he is counted against the in-state student enrollment cap, thereby reducing the number of available openings for in-state applicants who have not previously enrolled. One proposal to alter this result would require an out-of-state student who exercises his statutory right to change his residency classification to give up his status as an enrolled student. He would be required to reapply for admission as an in-state student subject to the risk of being denied admission because the enrollment cap had previously been reached. In effect the student would be penalized for changing status from out-of-state to in-state.
The memorandum of understanding expressly states that none of its provisions may be construed to supersede statutory requirements, including definitions of residency. The general assembly has specified by statute the rights of enrolled students to change classification status. Any conflict between provisions of the memorandum of understanding and the statutory requirements for changing classification for tuition purposes must be resolved in favor of the statute. The imposition of any additional limitations on a student's right to change classifications would require amendment of that statute by the general assembly and cannot be accomplished by action of the board of regents.
If the general assembly chooses to address this problem legislatively, serious consideration must be given to applicable principles of the United States Constitution. Recent decisions of the United States Supreme Court indicate that the U.S. Constitution would prohibit adoption of a re-enrollment requirement for the purpose of: 1) dissuading new domiciliaries from exercising a right to resident tuition status; or 2) giving preferential treatment to students domiciled in Colorado prior to applying for admission to a university. When subjected to constitutional scrutiny, neither of these purposes has been acknowledged as a legitimate state interest sufficient to support legislative discrimination against students who have qualified for in-state classification and are seeking to change their tuition status. Zobel v. Williams, 457 U.S. 55 (1983);Vlandis v. Kline, 412 U.S. 441 (1973); Shapiro v.Thompson, 394 U.S. 618 (1969). Since your question can be answered without further examination of the applicable constitutional principles, it is not necessary for this opinion to address those very serious issues at greater length. Suffice it to say that such a scheme must be accomplished by a statute which must be related to a legitimate state interest if it is to withstand constitutional scrutiny.
SUMMARY
My conclusion is that a requirement for qualified out-of-state students to re-enroll before being permitted to matriculate as in-state students requires legislative action by the general assembly. Such a legislative discrimination would withstand constitutional challenge only if it is part of a scheme that is rationally related to a legitimate state interest.
Very truly yours,
 DUANE WOODARD Attorney General
CITIZENSHIP RESIDENCE DISCRIMINATION DUE PROCESS EDUCATION, HIGHER EQUAL PROTECTION
Section 23-7-101 to 103, C.R.S. (1973)
LAW, DEPARTMENT OF University of Colorado
Admission rules which discourage new bona fide domiciliaries from exercising their right to in-state tuition violate due process and equal protection.